Our next case of the afternoon is 4-10-0068, Roby v. Rushville State Bank. For the appellant, Mr. Schmadeke, help me with that again. You've announced the correct name. Okay, thank you. And Mr. Wilson for the appellate. You may proceed. May it please the court, counsel. As Justice Konek said, my name is Charles Schmadeke and I represent the plaintiff appellants, two of whom are the surviving adult children of the decedent Charles D. Roby Jr. The other being the surviving spouse of another child who died while this litigation has been pending. He has been appointed the representative of that child. The claims before you today seek to contest the validity of the decedent's will, codicil, and accompanying trust. And the issue concerns the scope of the presumption of undue influence arising from the fiduciary relationship. Specifically, does the presumption apply in a situation where the fiduciary alleged to have exercised undue influence, drafted the instruments at issue, but is not the primary beneficiary under the instruments, but at the same time has a significant relationship with that primary beneficiary? And in this case, that relationship involves raising funds and that relationship was concealed from the decedent. The amended complaint, which was dismissed with prejudice under Section 2615 of the Code of Civil Procedure, asserts that the documents at issue were the products of undue influence by decedent's attorney, L. Milton McClurg. Although claims of undue influence may arise directly with evidence of fraud or coercion, the law does recognize a presumption of undue influence where there is a certain fiduciary relationship involved under certain circumstances. And I will address those circumstances in a minute. But first, I'd like to talk about what this case is. In this case, as I said, the fiduciary is Mr. McClurg. He is an attorney licensed since 1969 practicing out of Beardstown. Up to one-third of his practice is devoted to estate planning and related matters. Mr. McClurg had both a personal relationship with the decedent going back 35 years and a professional relationship. His personal relationship is noted by they would attend social events together, such as the decedent's 50th wedding anniversary. They were both Shriners, as we talked about. And Mr. McClurg would also assist with decedent's personal needs, such as taking him to the grocery store on occasions when other persons couldn't. In addition, the decedent and Mr. McClurg had an attorney-client relationship since the early 1990s. This relationship usually revolved around real estate transactions. Mr. McClurg and the decedent were both Shriners. Specifically, they were members of the Ansar Shrine headquartered here in Springfield. But McClurg was more than just a member. He was a leader of that organization with a specific office and specific duties regarding raising of money for the Shriners Hospital in St. Louis. From 2002 through 2008, McClurg served the Shriners in the capacity of donor relations chairman. In this position, he was in charge of raising money for the Shriners Hospital in St. Louis. He solicited and facilitated donations. He represented the Shriners in fundraising activities for the hospital and assisted lawyers and others with clients wishing to donate to the hospital. There wasn't any ARDC complaint or anything, was there? I'm sorry, Your Honor? There wasn't any ARDC complaint or was there? The surviving children have filed a complaint with the ARDC just recently, I have been told. I do not believe there has been any activity on that filing yet. It was in a six-year period, 2002 to 2008, when Mr. McClurg held that position of fundraising for the Shriners Hospital, that he drafted the instruments at issue which left the decedent's property to the Shriners Hospital. Apparently, Mr. McClurg did well enough in the job of fundraising that he was promoted in 2008 after the death of the decedent to the position of international donor relations chairman, where he exercised the same duties only on a larger geographic scale. Other offices held by Mr. McClurg with the Shriners include Potentate, High Priest, he was chair of an audit committee, and he was the general counsel for the Grand Royal Arch Chapter. When engaged in fundraising for the Shriners Hospital, Mr. McClurg was governed by and controlled by the regulations that the Shriners Hospital adopted for that purpose. We have specified some of those regulations in the amended complaint, but one of the key ones is that there was a prohibition on Mr. McClurg from charitable fundraising for any other organization while he was engaged as a Shriner. This was an amount of control exercised by the hospital over Mr. McClurg. The plaintiffs have alleged that in his role as decedent's attorney, Mr. McClurg exercised undue influence over decedent to benefit the very organization which he had money-raising responsibility. If those instruments are held to be valid, the documents drafted by Mr. McClurg will raise a substantial amount of money for the Shriners Hospital without anybody able to challenge whether or not they are valid. I mean, if this case is to continue to be dismissed. When decedent executed the instruments at issue in July of 2004, he was 84 years old. He was morbidly obese, confined to a wheelchair. He had been diabetic for years. He had previously suffered two strokes, one in 2000 and one in 2002. And he was incontinent. He was unable to care for himself, so independent caregivers were hired beginning in 2000. He was frequently irritable, irrational, confused, and belligerent. Some of the examples of that conduct are in the complaint, in the acute abusing nurses, refusing therapy, being evicted from his wife's nursing home for inappropriate and aggressive behavior. Even Mr. McClurg recognized in 2004, before these instruments were drafted, that the decedent's condition was deteriorating and that he was enfeebled. In March of that year, 2004, less than three months before the execution of the instruments at issue, McClurg informed another lawyer that the decedent was slipping both physically and mentally, and although McClurg thought he was competent, he recognized that the decedent was susceptible to unscrupulous third parties. That essentially sets the background of what happened between Mr. McClurg and the decedent. Now I'd like to go into how the estate planning documents came about. On March 26, 1990, the decedent and his spouse Bernice executed reciprocal, revocable living trusts. Generally, each provided that upon the death of one spouse, the trust estate was to be distributed to the surviving spouse or the surviving spouse's trust. If there was no surviving spouse, the residue would be distributed to the descendant's purse derpies. Between 1990 and 2004, the decedent amended his trust three times, twice in 2002, once in 2003. And on July 31, 2003, he also executed a will. The trust amendments and the will, however, did not alter his distribution plan. From March 1990 to July 2004, the decedent provided that if his spouse was not surviving at his death, then the property that he held at that time was to be distributed to his descendant's purse derpies. His wife Bernice passed away in March of 2004. At some point prior to her death, she revised her trust to provide that rather than going to her surviving spouse or his trust, the property was to be distributed directly to her descendants. The decedent didn't learn of this until after Bernice's death. And when he did find out about it, he became upset and belligerent. On July 12, 2004, less than four months after his wife's death, he signed the will that has been probated and is issued today. He signed that while sitting in a car, parked in an alley behind McClure's office with witnesses provided by Mr. McClure and in Mr. McClure's presence. As part of his new estate plan, the decedent also executed a fourth amendment to his revocable trust. That document was also prepared by Mr. McClure. Rather than sign the trust documents at the same time, he required the decedent to return to his office four days later where he executed the trust at that point. These instruments manifest a major change in decedent's donative intent and a change in the disposition of his property. Rather than leaving the property to his descendants, as all prior estate plans had done, these instruments named the Shriners Hospital in St. Louis as the primary beneficiary, the very organization with which McClure had money raising duties. The McClure instruments did keep one thing the same. Despite the failing, excuse me, despite his feelings toward his children regarding Bernice's estate, he decided to keep the children as the fiduciaries of the two documents, the trust and the will. Which leads to a question, if he had such feelings for them with regard to disposition of the property, why did he trust them at that time to keep them as the fiduciaries? Also, prior to the McClure instruments, the decedent's estate was set up to avoid probate through the operation of a trust. With the McClure documents, probate was necessary. Now, did Mr. McClure advise his client of his money raising duties for the Shriners Hospital? It must be emphasized at this point Mr. McClure was very much aware that the decedent was susceptible to unscrupulous third parties. He said so himself. But rather than advise the decedent of his relationship with the Shriners Hospital or his duties directed toward the Shriners Hospital, McClure concealed it. These are the words he used, I steered away from it. That's under testimony, under sworn testimony. He did not reveal it, he concealed it. As this court I'm sure is aware, undue influence is that which will invalidate a will or trust because of an improper urgency of undue or forbear from an act. As I noted earlier, undue influence can be a direct case, fraud, coercion, so forth, or it can arise under the presumption of undue influence because of a fiduciary relationship. A cause of action for presumed undue influence arising from a fiduciary relationship is stated when there is the existence of a fiduciary relationship between the testator or trustor, in this case I'll just use testator, he was both and the elements are the same for each. So a fiduciary relationship between the testator and the person exercising undue influence and the person exerting the undue influence had either received a substantial benefit from the documents or he directed the undue influence toward procuring a benefit for a third party. Number two, the testator is dependent upon the person who exerted undue influence and that person, the exerciser of undue influence is in a dominant role. Number three, testator reposes trust and confidence in the person exerting undue influence. Number four, the instruments were prepared by or executed in circumstances wherein the person exerting undue influence participated. We respectfully assert that the facts supporting each of these elements are contained within the amended complaint compelling this court to reverse the trial court. The administrators contended that the amended complaint lacks facts to show that the Shriners Hospital stood in a fiduciary relationship with the decedent. Well there's no doubt that the decedent stood in a fiduciary relationship with Milton McClure and that's as a matter of law. The law recognizes that an attorney-client relationship is fiduciary without any other elements necessary. A fiduciary relationship may also arise in circumstances that aren't as a matter of law but that's not necessarily the case here. Under the circumstances alleged in the amended complaint, McClure's undue influence, however, can be imputed to the Shriners Hospital. He either directed his undue influence to procuring the benefit for the Shriners Hospital or he was the Shriners Hospital's agent. In either case, it is our contention that the Shriners Hospital benefited due to the wrongful conduct of Mr. McClure. The Swenson case which is cited in my brief, 1968 case, said and I quote, undue influence may be the result of activities of third parties as well as the result of the activities of the direct beneficiaries, end quote. Old age, feebleness, disability of the testator are all material factors to be considered when analyzing whether undue influence existed. In this case, McClure served as a decedent's attorney. At the same time, he had a unique and important role with the Shriners Hospital. He was responsible for raising money. When the decedent visited McClure for professional services and drafting a will and a trust, he had to rely upon that fiduciary relationship. But yet he was confronted with the Shriners Hospital. McClure had the knowledge that the decedent was susceptible to undue influence and that feeling his view, excuse me, and the feeling that he had towards his children, yet he refused, he purposely concealed his relationship with the hospital in terms of raising money. On the other hand, if he had mentioned his relationship to the hospital, wouldn't you be here arguing he was trying to influence the client into leaving something? You didn't present any evidence anywhere, did you, that Mr. McClure tried to get him to leave his property to the Shriners? We did not, Your Honor, because we're operating under the presumption of undue influence and that's not an element that we need to raise on the presumption. If we raise the elements for a fiduciary relationship and the presumption is created, then there is an inference that the fiduciary acted that way. But what you're arguing is he intentionally concealed this relationship. The other question I wanted to ask you about that is they were both members of the same Shrine organization. Isn't it reasonable to believe that Mr. Roby knew of his relationship with the Shriners? I don't know that. He may have known of it, but what we do know is that McClure purposely steered away from it rather than disclose it. The law is very clear. One person can serve two different principles, but that should be disclosed so everybody can make an informed decision. In this case, Mr. Roby, we don't know whether he had the chance to refuse that service or not. But he may have known of it. I don't know that. There's no evidence to that effect at this point in time. Would I be arguing that there was undue influence if McClure had said, hey, I'm a Shriner, but you should give it this way? At that point, I may have a direct undue influence case. But I'm not there. I don't have that. What I've done is raise the presumption case. Mr. McClure drafted these documents disinheriting children for the first time in the entire estate planning history. You've emphasized that several times. The records suggest that the decedent had a strong personality and was a strong-willed individual. Is anybody really surprised that he changed his distribution plan after he found out what his deceased wife had done? I can answer you by saying that his children were surprised. I said that too lightly. I would understand that there would be surprise, but both that you see in the trial court and we see on appeal, it certainly is not unusual for a parent to become disenchanted with children, not necessarily because of anything, maybe not. Would you agree? I would agree with that. People have the right to not leave things to their children. But what we are dealing with here is a unique and suspicious set of circumstances that may not be present in most cases. The documents were set up to have probate rather than to avoid probate. I'm not an estate planning lawyer, but I'm told that that is a good thing to achieve. Avoid probate. Yet they undid that. They scrapped the avoidance of probate and required probate. Now the administrator has suggested that the presumption should be limited to cases in favor of third parties where there is a direct or near direct financial benefit to himself. First of all, I would say the cases don't say that. But I would say this, if there is any limit to where the cases should be drawn, it should be drawn where the circumstances indicate that there is a benefit or a reason for the person exercising undue influence to do what he has done. For instance, if Mr. McClure drafted these wills and he left everything to the local rotary club, I don't have a case to say that there is undue influence. Mr. McClure, as far as I know, has no connection with the rotary. But because of here, because of the unique role he had with the Shriners who benefited substantially from this, there is, I believe, the presumption that there is undue influence in this particular case. Thank you, Your Honors. We'll hear from you on rebuttal. Good afternoon. May it please the Court. Tom Wilson on behalf of the Rushville State Bank as the administrator. Mr. Schmadeke. In this case, Judge McMillan correctly dismissed the amended complaint after giving the plaintiffs an opportunity to replete because, candidly, they can't allege the facts that they need in order to ride the only horse they have, and that is this legal fiction we call a presumption of undue influence. They don't contend that Mr. Robey was not capable or not competent to execute these documents. They don't contend that there is any direct evidence of undue influence. As you pointed out, Your Honor, that Mr. McClure said or did anything to influence where he was going to leave his money. All they want to rely on is this presumption. Well, they've got two alternative theories that they pursued at the trial court level, neither one of which get them to the elements they need in order to state a cause of action under Illinois law. The first attempt that they made was in the original complaint where they tried the traditional elements, that is a fiduciary procures a testamentary document that leaves the fiduciary a substantial benefit. Well, who got the substantial benefit? The Shriners Hospitals for Children. But the Shriners Hospitals for Children as an organization were not Mr. Robey's fiduciary. There's no allegations in the original or amended complaint by which that conclusion can be drawn. The Shriners Hospitals for Children did not procure or prepare the documents. The plaintiffs expressly allege that Mr. Robey went to Mr. McClure as Mr. Robey's attorney who had represented him for ten years to prepare this estate plan. And while the plaintiffs allege various roles that Mr. McClure held with the Shriners, and I think they are somewhat mixing the hospitals and the local fraternal organization in which he actually held these roles, but they are related, they don't expressly allege any facts which would establish that when Mr. McClure was doing the estate plan for Mr. Robey that he was acting as an agent for the Shriners Hospitals for Children. Why would he say when he was doing this work that he purposely concealed his relationship? I don't believe he said he purposely concealed it. I believe the testimony at the formal proof of the will, Your Honor, in response to his question as to did you specifically discuss your role with the Shriners Hospitals is he said I stayed away from it or I steered away from it. Is that the same thing? I don't believe it is because as Your Honor pointed out, they both attended for decades, the members of the local Ansar Shrine organization. Mr. Robey was well aware of Mr. McClure's participation, membership in and role with the Shriners. They went to the same meetings. They probably sat next to each other at most of these meetings. So to suggest that this was something where there was something hidden from Mr. McClure just flies in the face of all logic and inference under the complaint. In this case, the plaintiffs cannot prove two of the essential elements they need in order to state a claim under the traditional elements set forth in the jury instructions and the cases such as Tidholm and Dean from the Supreme Court. That is, the Shriners Hospitals were certainly not a fiduciary for Mr. Robey and I'd refer to the Osborne case on that where the court dismissed on Catholic Church was a fiduciary and there was certainly more allegations in that case establishing a relationship than they have here. There's nothing at the Shriners Hospitals as the hospitals did for Mr. Robey. Second, if you take a look at the case that the plaintiffs cited Clegg, C-L-E-G-G, out of California, that's the poster child for when an organization can be found to be a fiduciary who may have took its own nursing home attorney and sent him and paid him to prepare a will, leaving all the money to the nursing home. That's not the case here. So the first or the traditional way of trying to prove this presumption, it just doesn't get past two of the four required elements. So with the plaintiffs, what they did between the original and amended complaint is kind of changed forces and they said, okay, well, you can also have a fiduciary who prepares a will who exercises undue influence to benefit a third party. Well, if that's the case, we're no longer talking about McClure must have been an agent for the Shriners Hospitals. He was simply benefiting a third party, i.e., the Shriners Hospitals. But when we look at the cases in Illinois and elsewhere that have addressed that issue, that theory also fails. And I say that because almost every case, the Schmidt case, the Swenson case that Mr. Schmadeke talked about, the Blackhurst case and the Trethen case are all cases in which the person who procured the will left the money to their spouse, obviously a direct benefit for the individual. The only case in which it was somebody other than the spouse was Chaney and that was to minor children. So it's directly to the family unit where the gift is going that the courts found a presumption could be raised. And this makes sense because the plaintiffs in this case have raised issues regarding Mr. McClure's professional conduct. Well, let's look at the Illinois rules. Rule 1.8, a lawyer shall not prepare an instrument leaving a substantial gift to a parent, to a child, to a sibling or a spouse unless the client is related to the donor. The Illinois cases, just like the drafters of the Illinois rules of professional responsibility, have had to draw the line somewhere between who is it who a gift to can raise a presumption and who is it who it could not. For example, a lawyer in Illinois can draft a will leaving a substantial gift to their wife's parents but not to your own parents or to your wife's brother but not to your own brother. In this case... So we look at Mr. McClure's action as being entirely appropriate? Yes. I don't believe there was any violation of the rules of professional responsibility. And in follow-up to your question, Your Honor, about was there a complaint filed against Mr. McClure with the ARDC, this case has been going on now for two years. And I believe you asked that same question about six weeks ago when we were here on the other case. And it was only after that that the family in this case apparently decided to go file an ARDC complaint. But I would also refer to, and the last point I want to make, is the two Supreme Court cases that we have cited, one in a brief and then one by leave of court as supplemental authority, where this argument as to a gift to a related party not raising the presumption was made. And that is the Enos case in the Supreme Court in which it was a gift to grandchildren of the person allegedly procuring the will. And the Supreme Court said, well, that doesn't raise a presumption. It's not a direct benefit to the person procuring the will. And perhaps the closest case that I have seen cited by either party is the Doherty case from our Supreme Court in 1920, where the individual went to a person who was on the board of directors of the Blessing Hospital in Quincy and had that person prepare a will that left a substantial benefit to the Blessing Hospital. And the Supreme Court rejected out of hand the concept that that situation created a presumption of undue influence. What the Supreme Court said specifically is, and I'm quoting from the last page of the opinion, there is no proof that Montgomery, the individual preparing the will, ever advised or suggested the making of the will or any of its provisions, and the mere fact that institutions in which he was interested received substantial benefits from the will under all the authorities does not support the claim of undue influence. Does this case fall somewhere in between, though? I mean, I don't pretend to know anything about fraternal organizations, but given the number of meetings and the titles that are given and the things that I have read about it, it appears as if people enjoy the recognition that they receive from peers for advancing through the order and acquiring titles. And to some people, that could be viewed as more important or just as important as professional titles or economic success. So while I don't know how clear the record is on whether these are local designations or statewide or national in the being a member of a board of directors of a hospital or interested in a hospital and you're going to rotate off of it in three years because the board has that kind of policy or something, it's just different. Well, it may be different, Your Honor, but I don't believe that it's a matter in which it makes a difference in the results in this case. And I say that for a couple of reasons, because in the Dockery case, I believe that that's even a stronger case where the as if you had two members of the board of directors, one of whom asked the other to prepare his will, leaving it to their joint organization. Keep in mind, the Shriners was an organization that, by the plaintiff's own admission, Mr. Roby was a member of for decades. It's not as if it was some charity unknown to him. Well, being a member of the local lodge, if that's the right term, may not be quite the same thing as rising through the order and getting titles and being recognized. Well, that may be. However, I would also use the analogy of if we're going to get beyond the cases which exist in Illinois today as to where is the line drawn, and it's clearly drawn at direct financial benefits or potential financial benefits directly to the individual, that is by gift to your spouse or your minor child. We're going to get beyond that. Where do you want to draw the line? If I draft a will that leaves a substantial benefit not to a charity that I am affiliated with, but the church on which my wife serves on the board of trustees, or the charity that is near and dear to her heart because I want her to have it. Or the Illinois Bar Foundation. Or the Illinois Bar Foundation. In which I would imagine you have an interest. I believe I do. I'm a member of the Bar Association. So at what point are we going to draw the line? Well, the cases, the Supreme Court cases, have told us that. And they've drawn the line where there is a direct or near direct financial benefit to the drafting attorney. And a benefit to your grandchildren doesn't get you there. A financial benefit certainly to an organization that you serve on the board of directors of does not get you there. All of the cases, both in Illinois as well as the foreign jurisdictions, have been ones where it's been the spouse or the minor children. So in this case, I understand the plaintiffs are unhappy. As you pointed out, you certainly would be if your father disinherited you. But he had a reason he did it. And he went to his lawyer, who was representing him as his agent, prepared this estate plan. And there's not a shred of factual allegation of anything establishing undue influence other than this legal fiction we After the will is drafted, but before it's witnessed, signed and witnessed. What prevents a lawyer who finds himself in this situation from then making a disclosure? It's clear from the document itself and the witnesses who are present that the decedent has the opportunity to say, well, this was my idea to give it to the hospital. I'm glad you're now telling me that you actually had this title that I wasn't aware of. That didn't make any difference to me. I'm the one that picked the charity. And actually file that as a disclaimer or revelation regarding not a conflict, but just something that Obviously there was some degree of discomfiture, might not be the right word, but ascribing to Mr. McClure good motives for the moment. He didn't want to bring it up because he didn't want to influence him, if you view it from his perspective. Well then, after the testator or the person wanting the will drawn has already made their wishes known, wouldn't it be okay to say, by the way, I'm on the board of directors of the Children's Home and Aid Society. I wanted you to know that before you execute the will. What I would assume 99 times out of 100, maybe almost 100 out of 100, unless there really were something wrong, the person would say, well, yeah, I knew that, Charlie. I mean, you know, you've sold me tickets to go to their fundraisers or whatever. No harm, you know, who cares? I'm going to sign the will anyway. It was my idea. Why not do that? Well, I think from a practice of, would it be good practice for an estate planning lawyer to do that? Sure. No different than if you have a testator who there is some question about, are they going to be challenged down the road as to competency? And we've done it ourselves at my firm. You videotape the discussion. So when somebody comes out of the woodworks 10 years later, here's the videotape of me talking to your dad and explaining all of this. But the question is, not is it good estate planning practice, but is the absence of that, does that get them to where they need to be under the factual allegations of presumption? The answer is no. What about the, I assume this was pled, or it's in some discoverable document, where Mr. McClure has to promise not to raise funds for other entities? Well, I think that is actually in one of the documents attached to the complaint, which is what they call the guide handbook for the local fraternal organization that basically says, well, if you're going to be an officer of this fraternal organization, It's not specific to him, but it's the general principles. If I'm a Shriner in the local fraternal organization, when I'm acting as a Shriner, what I'm raising money for is the Shriner's Hospital. It just makes sense. When I'm out with the local fire department and I'm a member of doing the MDA fill the boot thing, well, I'm raising money for the MDA. But that doesn't mean Mr. McClure can never raise money for another charity. It's when he acts as a Shriner and he's working as the local, as a representative for the local Ansar Shrine Temple, is the local temples exist to support the Shriner's Hospital for children. And I think just to conclude is, had Mr. McClure got into that type of a discussion, I think that's exactly what he was suggesting in his answer during the formal proof. Well, I didn't want to have this extensive discussion about the role of the Shriners because I think we'd be exactly where Justice Polk suggested is, they'd be arguing the other side of it. Oh, you talked all about the Shriners and your fundraising role with them and so on. So that's just evidence that that's what you were trying to influence him here. So you're kind of betwixt and between no matter which way you go. But the point is, in order to state a claim, they have to plead facts and name all four elements of the presumption they want, particularly when they have no evidence that they can plead of any undue influence. And before we get past the pleading stage, if they don't have those facts to plead all four elements, the case is properly dismissed and should be affirmed. Thank you. Thank you. Roberto? Thank you, Your Honor. Counsel says the cases draw a line. They do not draw a line. They talk about certain elements where there's a presumption or there's not a presumption, but they don't draw the line. They simply say that undue influence could be exercised by a fiduciary for the benefit of a third party where the bad actor directs the benefit for the third party. Now, where do we say that it has to be a financial benefit? Well, the cases don't. What is undue influence? You're exercising your persuasion to convince somebody to do something or refrain from something they wouldn't do otherwise, or they would do something that they wouldn't do. Clearly, the history of undue influence in a presumption situation is that it goes to a family member if it's not a direct benefit, meaning the lawyer drafted the will for his benefit, his spouse's benefit, or the lawyer's child. But the cases don't draw the line there. If we have a situation where somebody has an interest in benefiting a third party simply because of the respect or the honor that that individual may get and he exercises undue influence, the law has to give a remedy to that. And we're talking about a fiduciary relationship. It's very clear why the law sets up a presumption in a situation of a fiduciary relationship because of the duty the fiduciary has to the client. It's supposed to be undivided loyalty to the client, not loyalty that you can divide, okay, I'll take care of the client but at the same time I can serve this other entity that I want to take care of. That's what it's about. So, under our situation, the presumption should arise because Mr. McClure, acting as a fiduciary, took care of the organization that he has to raise money for. That's what this is about. The line hasn't been drawn. The cases talk about there's a presumption here, there's not a presumption here, but no court has ever said, well, it has to be a direct financial benefit. Now, historically, I don't want to mislead the court, it clearly was that the on-due influencer had to be the primary beneficiary as well. But, since I believe the mid-60s at least, the courts have been saying that the on-due influence could be exercised for the benefit of a third party. It doesn't say financial benefit. It doesn't say that the on-due influencer has to have some direct financial benefit. It just says that the on-due influencer directed it to a third party. In this case, we've alleged that McClure did it for the organization which he was raising money for. He directed these documents. And we advised in the amended complaint what the suspicious circumstances were surrounding this entire event. Now, clearly, if some of these circumstances weren't there, there may be a different case, or not a case. But that's not what we're dealing with. We're dealing with very specific facts that we've pled, showing what the relationship between McClure and the decedent was, the relationship between McClure and the Shriners was, and how these are inextricably intertwined in this situation with Robey. Now, I'm not here to advise or discuss what the ethics of Mr. McClure were. That isn't what this cause of action was about. But based upon the court's questions, if Mr. McClure thought that he had a conflict, then he should not only disclose it, but necessarily refrain from taking the case. Are the plaintiffs required to prove that Mr. Robey was not competent? This is not a case where we're alleging incapacity. We are alleging on-due influence where the diminished capacity is a factor, but not that he was incompetent. Thank you, Your Honor. Thank you.